# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY WIMBERLY,

    Plaintiff,

v.

WARDEN JEFFREY DENNISON and
JERID PICKFORD,[1]

    Defendants.

Case No. 3:17-CV-472-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This is a prisoner *pro se* civil rights lawsuit arising out of events that occurred at Shawnee Correctional Center ("Shawnee") (Doc. 7). Pending before the Court is the Motion for Summary Judgment filed by Defendants Jeffrey Dennison and Jerid Pickford (Doc. 32). Defendants also have filed a Motion to Strike (Doc. 41). For the reasons set forth below, Defendants' motion to strike is denied, but their motion for summary judgment is granted.

### BACKGROUND

At the time referenced in the complaint, Plaintiff Anthony Wimberly was an inmate incarcerated in the Illinois Department of Corrections (IDOC) (*Id.*). On January 11, 2017, while incarcerated at Shawnee, Wimberly was transferred to cell 31 in the segregation unit. Wimberly claims the cell should have been "condemned" due to the

---

[1] The Clerk of Court is **DIRECTED** to correct Defendant's name on the docket from Sgt. Pitchford/Pickford to Jerid Pickford.

poor conditions (Doc. 33-1 at pp. 4-5). The cell's sink had a pen stuck in the spout, which was the only way the water would come out (*Id.*). While Shawnee's records indicate that a plumber was called to Wimberly's cell for a work order on January 11, 2017 (Doc. 33-3 at p. 4), Wimberly testified he does not recall a plumber ever coming to work on the plumbing in his cell (Doc. 33-1 at p. 6). Wimberly further testified that the window was drilled shut so that the air did not circulate properly, though he admitted this was during the winter months. (*Id.*). Furthermore, he testified that the window screen was torn, allowing ants and gnats to invade the cell (*Id.*). The sink and toilet also were contaminated with mold and mildew (*Id.*). While Wimberly was given a sheet for his bed, he testified the sheet was dirty and ruined (*Id.* at p. 5). Wimberly admits, however, that laundry was completed once or twice a week (*Id.* at p. 6; Doc. 33-4).

Wimberly was confined for 20 days in segregation cell 31. On January 31, 2017, after complaining about the conditions, Wimberly was transferred out of the first cell and into another cell (*Id.*; Doc. 33-2). Two days later, on February 2, Wimberly was transferred to another segregation cell after additional complaints (Doc. 33-2). The next day, Wimberly was transferred to yet another segregation cell, where he remained until the end of his segregation discipline on February 10, 2017 (*Id.*). Wimberly testified that he was bounced from cell to cell because the prison officials did not want other prisoners to suspect their constitutional rights were being violated (*Id.* at p. 8).

Wimberly testified that cleaning supplies were never given to him during his stay in segregation, so he had to use his personal soap and rags to clean his cells (Doc. 33-1, p. 7-8). Again, however, Shawnee's records indicate Wimberly received cleaning supplies

five times while housed in segregation (Doc. 33-4). Wimberly also admits that he suffered no medical issues as a result of his cell conditions other than insect bites (Doc. 33-1, p. 11).

At his deposition, Wimberly could not recall speaking to anyone regarding his concerns and the conditions of his cell while at Shawnee except Defendant Pickford, who worked in the segregation unit (Doc. 33-1, pp. 8-9). Wimberly testified that he complained to Pickford about his living conditions from day one in segregation (*Id.*). Pickford then began moving Wimberly to a new cell each time Wimberly complained (Doc. 33-1, p. 10).

Wimberly never spoke with Defendant Dennison, the warden of Shawnee, regarding the conditions of his cell (Doc. 33-1, p. 9). Wimberly also did not have any personal interaction with Dennison during his 30 days in segregation (Doc. 33-1, p. 9). Wimberly testified that he was transferred to Illinois River Correctional Center after he filed a grievance about Dennison (Doc. 1-1; Doc. 33-1, p. 8).

Wimberly filed this lawsuit on May 5, 2017, pursuant to 42 U.S.C. § 1983, alleging Defendants Dennison and Pickford violated his constitutional rights (Doc. 1). Specifically, in his First Amended Complaint, Wimberly alleges Defendants were deliberately indifferent when they intentionally placed him in unsanitary cells, causing him to suffer various health ailments and putting him at risk of serious injury (Doc. 7). Wimberly alleges that this treatment constitutes cruel and unusual punishment, in violation of the Eighth Amendment (*Id.*).

On July 12, 2019, Defendants moved for summary judgment (Doc. 32). On January 6, 2020, Wimberly filed a response in opposition to Defendants' motion (Doc. 39). On

January 17, 2020, Defendants filed a Motion to Strike Wimberly's response as untimely (Doc. 41).

## LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. At the summary judgment phase of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). The Court shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). To survive summary judgment a non-moving party must "show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009). Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Motion to Strike

Wimberly did not timely respond to Defendants' motion, and Defendants have moved to strike the late-filed response. Under Rule 56 of the Federal Rules of Civil Procedure, Wimberly's response was due on August 15, 2019, but was not filed until January 6, 2020.

Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Generally, "motions to strike are disfavored" because they often serve only to delay the proceedings; however, they can be useful in removing "unnecessary clutter from the case." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For this reason, courts have held that a party must show prejudice to succeed on a motion to strike. *See, e.g., Anderson v. Bd. of Educ. of Chi.*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Prejudice exists where the allegation confuses the issues or is so lengthy and complex that it puts an undue burden on the opposing party. *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Here, Wimberly never sought leave to file a late response nor offered any explanation for his failure to comply with the rules. On the other hand, Defendants have not alleged any prejudice, and Wimberly's filing appears largely duplicative of prior filings in the record. Furthermore, the Court is confident it can evaluate the merits of the pleadings without needing to strike any portions of them. Because Defendants are not prejudiced by the late response, the Court denies the motion to strike.

## II.    Summary Judgment

"[P]ursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must

take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

An inmate plaintiff must meet two requirements to succeed on an Eighth Amendment claim. The Court must first evaluate whether the conditions that Wimberly endured in segregation were, from an objective standpoint, sufficiently serious that they resulted "in the denial of the minimal civilized measure of life's necessities." *Id.* The Seventh Circuit has "interpreted this general statement as a requirement that prisons provide inmates with 'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.' " *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)).

Second, a prison official "must have a sufficiently culpable state of mind," *i.e.* deliberate indifference to inmate health or safety. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). State officials are deliberately indifferent if they "know of and disregard an excessive risk to inmate health or safety." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). The plaintiff must show that the officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference." *Id.* quoting *Farmer,* 511 U.S. at 837.

Generally, the prisoner plaintiff must show that he is or was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. Although the Constitution does not mandate comfortable prisons, it does not permit inhumane ones. *Snipes*, 95 F.3d at 590; *see also Martin v. Tyson,* 845 F.2d 1451, 1457 (7th Cir. 1988) (detainee has no right to a pillow, new tennis shoes, cleaning supplies or

frequent laundry service); *Harris v. Fleming,* 839 F.2d 1232, 1234-36 (7th Cir. 1988) (keeping prisoner in "filthy, roach-infested cell," without toilet paper for five days, soap and other toiletries for ten days, not sufficiently serious to state Eighth Amendment claim).

Here, even construing the facts in a light most favorable to Wimberly, the Court finds that he has failed to show that he was deprived of the minimal civilized measure of life's necessities, that is, reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities. Wimberly testified that the windows were drilled shut, but he also admitted it was winter. He claims the window screen was torn, allowing insects to come inside, though he could not explain how the insects got inside (or how he knew the screen was torn) if the window was screwed shut. Wimberly testified that the sink and toilet were contaminated with mold and mildew and he was not given cleaning supplies, but he admitted he had personal property including soap and rags to clean them. Wimberly also admitted that the sheets he deemed unsatisfactory were laundered once or twice a week. And, while he testified that his cell's sink had an ink pen stuck in the faucet, there is no evidence that the sink did not work or that water would not come out. Based on these facts, no reasonable jury would find that the conditions of Wimberly's confinement in segregation posed an objectively serious risk to his health or safety.

Even if the conditions were objectively serious, Wimberly has failed to prove that Defendants had the requisite mindset, that is, deliberate indifference. Wimberly admits that each time he complained to Defendant Pickford, he moved Wimberly to a different cell. *Mims v. Hardy, No. 11 C 6794, 2013 WL 2451149, at \*12 (N.D. Ill. June 5, 2013)* (finding defendant was not deliberately indifferent when he attempted to resolve the cell's

plumbing issues by placing work orders); *see also Wilson v. Morrow*, No. 14-1162-JES, 2017 WL 5559907, at *8-9 (C.D. Ill. Nov. 17, 2017). Wimberly further acknowledges that he never spoke with Warden Dennison, and he has provided no evidence that Dennison knew about the conditions of his cells. Therefore, the Court finds that Wimberly has failed to show that Defendants knew of and disregarded an excessive risk to his health or safety. Accordingly, Defendants are entitled to summary judgment.

## Conclusion

For the reasons set forth above, the Motion to Strike (Doc. 41) filed by Defendants Jeffrey Dennison and Jerid Pickford is **DENIED**. Defendants' Motion for Summary Judgment (Doc. 32) is **GRANTED**. Plaintiff Anthony Wimberly shall recover nothing, and the Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

**DATED: March 30, 2020**

                                                                                                  _____
                                                                                                  **NANCY J. ROSENSTENGEL**
                                                                                                  **Chief U.S. District Judge**